# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| REYNALDO V. FLORES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-00275 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the court on the petition for judicial review of the decision of the Commissioner of Social Security filed by the claimant, Reynaldo V. Flores, on October 29, 2012. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

### Background

The plaintiff, Reynaldo V. Flores, applied for Disability Insurance Benefits on January 13, 2009, alleging a disability onset date of May 10, 2003. (Tr. 180–84) His claim initially was denied on March 20, 2009, and again denied upon reconsideration on April 20, 2009. (Tr. 122–25, 127–29) Flores requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 130–31) A hearing before ALJ Roxanne J. Kelsey was held on November 1, 2010, at which Flores and vocational expert ("VE") Melissa Benjamin testified. (Tr. 59–109)

On November 22, 2010, the ALJ issued her decision denying benefits. (Tr. 25–45) The ALJ found that Flores was not under a disability within the meaning of the Social Security Act from May 10, 2003, through the date he was last insured for Disability Insurance Benefits, December 31, 2008. (Tr. 25–45) Following a denial of Flores' request for review by the

Appeals Council, he filed his complaint with this court.  (Tr.4–6)

Flores was born on August 23, 1954, making him 56 years old on the date of the ALJ's decision.  (Tr. 63)  He is 5'10" and weights about 250 pounds.  (Tr. 74–76)  He is single with no minor children and lives alone.  (Tr. 80)  He has some college and last worked as a mechanic in 2003.  (Tr. 63–64)  Flores held this position for 30 years before he stopped working.  (Tr. 64)  He retired from his job as a mechanic in 2003, when he believed he became disabled.  (Tr. 64)  Flores has not worked since his retirement.  (Tr.64)

Flores suffers from several impairments including:  diabetes mellitus with neuropathy, headaches, discogenic and degenerative disorders of the spine, degenerative joint disease, problems with his knees from previous surgeries, high blood pressure, obesity, GERD, shingles, and sleep apnea.  (Tr. 30)  Flores' diabetes has caused neuropathy in his extremities.  As a result, he had a Nerve Conduction Study which produced abnormal results.  (Tr. 374)  The results showed an abnormal left ulnar CMAP, CMPA, and SNAP amplitude in the right upper extremity.  (Tr. 374)  The report also showed median neuropathy in the right wrist, left L5 and S1 radiculopathy, and chronic right L5 radiculopathy.  (Tr. 374)

In December 2005, Flores had an electrodiagnostic study on his extremities done, which showed mild left medium neuropathy in his wrist and L5-S1 radiculopathy or right sciatic nerve lesion.  (Tr. 378)  In March of 2006, Flores began physical therapy that was prescribed by Dr. R. Ivankova for his back pain.  (Tr. 408)  In September, he had an MRI because of his headaches, which showed a non-specific single punctuate focus of increased flair signal in the right frontal white matter.  (Tr. 282)  In October, Flores had surgery to have his hemorrhoids removed.  (Tr. 293)  In January of 2007, Flores had surgery again for hemorrhoids and also to remove two

polyps from his colon. (Tr. 288, 290) In April 2007, Flores had a CT performed because he had lower back pain, which showed a mild bulging annulus of L5-S1 and L4-L5 and a subtle disk bulge at L2-L3. (Tr. 316–317)

Throughout 2008, Flores saw Dr. James Meade for his foot problems. (Tr. 348–60) His diabetic neuropathy caused the skin on his feet to dry, crack, and peel. (Tr. 360) The condition also had caused decreased bilateral sensation. (Tr. 360) The diabetic neuropathy eventually required surgery on his right foot on May 28, 2008. (Tr. 356) The surgeon informed Flores that there was a good chance that the pain would recur or that problems with numbness and swelling would develop, possibly requiring further treatment. (Tr. 353) Flores had two more surgeries on his foot that year, one to remove part of his toe and the other to remove a heel spur. (Tr. 353, 387–89) He reported feeling no pain and experiencing no problems after the surgeries. (Tr. 349–53) Dr. Meade also provided Flores with relief by debriding his toenails and the skin on the soles of his feet. (Tr. 348)

In November of 2008, Flores had an MRI, which revealed L5-S1 disc herniations, left-sided neural foramen stenosis, mild L4-L5 spinal stenosis, and L2-3 and L4-5 disc degeneration. (Tr. 543) In November and December of 2008, Flores attended physical therapy as prescribed by Dr. Ivankova, again to alleviate back pain. (Tr. 391–92) Prior to this treatment, Flores rated his pain as a five out of ten on a ten-point scale while taking medication. (Tr. 404) After the treatment, Flores rated his pain as a three out of ten on a ten-point scale. (Tr. 399) In March of 2009, Flores reported no pain or problems with his joints and no problems with his upper or lower extremities. (Tr. 441 & 443) Flores displayed problems with getting on and off the exam table, walking, squatting, and hopping. (Tr. 443) Dr. M. Brill assessed Flores' residual

functioning capacity ("RFC"), which showed that he could perform light level work with postural limitations. (Tr. 446–53)

At the hearing before the ALJ, Flores testified that prior to his insurance expiring, he suffered mainly from diabetes, foot problems, back problems, and headaches. (Tr. 64–67) He testified that his feet were a big problem because of the neuropathy and that he would have to have the doctor treat them every five weeks. (Tr. 65) He also had to treat his feet every day with creams to keep them from cracking. (Tr. 65) His headaches would occur anywhere from one to five days a week. (Tr. 67) When he would get a headache, he would have to take medication and sometimes needed to lay down for hours. (Tr. 67) Flores testified that he often would have bad attacks on account of his GERD. (Tr. 67) He expressed that his sleep apnea was a problem, but that he recently got a CPAP machine to help him breathe at night. (Tr. 69–70) He noted he often needed naps during the day, even with the use of the machine at night. (Tr. 70) He said that he could drive before his insurance expired but that he would not drive if he was taking either hydrocodone or scelaxin. (Tr. 72–73) Flores testified that he still had problems with his shoulders, could not lift his arms, and experienced soreness. (Tr. 74)

Flores testified that when he first was diagnosed with diabetes, he weighed approximately 330 pounds. (Tr. 75) Over the next year, he lost 110 pounds. (Tr. 75) At the time of the hearing, he weighed approximately 250 pounds. (Tr. 76) On a typical day he ate breakfast at 11:00 A.M., had a snack ranging from 20 to 30 grams of sugar around 4:30 P.M., ate dinner around 6:00 P.M., and had another snack sometime before bed. (Tr. 76)

Flores testified that he lived in Chicago with two friends for two years prior to his insurance expiring. (Tr. 67) When it became too expensive, he moved back to Gary, Indiana,

where he bought his own home.  (Tr. 67–68)  He testified that because he lived alone, he was responsible for all the household chores, including cooking, cleaning, and grocery shopping. (Tr. 77)  He stated that he would have to wear a brace on one knee and wrap the other knee while performing his chores.  (Tr. 77)  He testified that he would walk for approximately 45 minutes when grocery shopping.  (Tr. 78)  He sometimes would require a nap after grocery shopping or doing other morning tasks.  (Tr. 77–78) Flores stated that he often read and cited a list of books he already had read.  (Tr. 78–79)  Flores admitted that a friend would stop by his home on his way to or from work to help anytime he needed to move something heavy or lift something over twenty pounds.  (Tr. 103–04)

Flores testified that he had no problem being around other people.  (Tr. 80–81)  He stated that prior to his insurance expiring, he suffered from pain in his shoulder, back, and knees constantly.  (Tr. 81)  He noted that the pain in his back was near his waistline and that it would get better or worse depending on his daily activities.  (Tr. 82)  He would not lift anything heavy because that would cause the back pain to worsen, but he could lift and carry approximately 20 pounds.  (Tr. 82)  He said that he would have to stand up for 15 or 20 minutes after approximately one hour of watching television or a movie because of his back pain.  (Tr. 84)  He testified that before his insurance expired, he thought he could walk one hour easily but not two or more hours because of pain in his knees.  (Tr. 84)  He stated that he had no problems with his hands except that they would get very cold.  (Tr. 84–85)  His feet had the same problem.  (Tr. 85)  Flores' attorney told the ALJ that this likely was caused by the neuropathy.  (Tr. 86) Finally, Flores emphasized that in the last two years before he stopped working, he was put on light duty with the option of resting when he needed to.  (Tr. 88-89)

While being questioned by his attorney, Flores testified that when he was working in the beginning of 2006, he could not stand for six hours of the eight-hour work day.  (Tr. 94)  At that time he was having trouble with his knees, back, and feet.  (Tr. 94)  He stated that he would have to sit for at least 30 minutes after standing for 45 minutes to 1 hour.  (Tr. 94)  He said it would depend on how much pain he had in his right knee.  (Tr. 96)  If he was in a lot of pain, then he would have to stay off his knee for the rest of the day.  (Tr. 97)  On a bad day, he could stand for only 30 to 45 minutes the whole day.  (Tr. 97)  Flores said he experienced this level of pain two to three days a week.  (Tr. 97)  He stated that his left knee also was painful from 2006 to 2008. (Tr. 99)

Flores testified that he also had difficulties with his feet from the neuropathy from 2006 to 2008.  (Tr. 100)  He stated that in the summer his feet would be so warm that they burned and were uncomfortable, and in the winter his feet were very cold.  (Tr. 100)  The neuropathy also would take the sensation from his feet.  (Tr. 101)  He stressed that the problems with his feet affected his ability to stand and walk because it was uncomfortable.  (Tr. 101–02)  Flores also testified that he had problems in 2004 with his shoulder after a surgery.  (Tr. 102)  He noted that he needed help from a friend when he had to lift anything more than 20 pounds.  (Tr. 104)

Next, VE Melissa Benjamin testified.  (Tr. 90–93)  She stated that the Dictionary of Occupational Titles ("DOT") listed a mechanic as DOT number 602.261-022, with a specific vocational preparation ("SVP") level of 7.  (Tr. 90)  The ALJ then asked a series of hypothetical questions to the VE for someone of the same age, education, and work history as Flores.  (Tr. 91)

In the first hypothetical question, the ALJ asked the VE whether an individual who could perform at a light exertional level, occasionally could lift and carry 20 pounds, frequently lift and

carry ten pounds, stand and walk for six hours out of an eight-hour day, push and pull, sit for six hours, climb ropes/ladders/scaffolds, kneel, crawl, and crouch could perform Flores' past relevant work. (Tr. 91-92) The VE said no because the past work was not at a light exertional level. (Tr. 92) The ALJ then asked the VE to assume that the individual had a high school education, with Flores' past work experience, and was age 54. (Tr. 92) The VE said that such an individual could be an information clerk, which was unskilled work with a DOT number of 237.367-018 (5,000 jobs), usher with the DOT number of 344.677-014 (4,000 jobs), or a host, DOT number 293.357-018 (3,000 jobs). (Tr. 92)

The second hypothetical asked the VE to assume the same facts as the first hypothetical but with the additional limitation that the individual could not sit or stand for more than one hour at a time. (Tr. 92) The VE answered that this individual would have half of the job options given to the individual in the first hypothetical. (Tr. 93)

Next, Flores' attorney questioned the VE, asking the VE a third hypothetical in which she was to assume the same facts as the first hypothetical except that the individual could not stand more than 30 minutes a day two to three days a week. (Tr. 105) The VE said this would limit the individual to a sedentary exertional level of work and eliminate light work. (Tr. 105)

Finally, the attorney asked the VE to assume the same facts as the first hypothetical, except that the individual had to lay down a couple times per day for one hour. (Tr. 106) The VE said there was no competitive employment for someone who had to lay down during the workday. (Tr. 106)

In her decision, the ALJ discussed the five-step sequential evaluation process for determining whether an individual was disabled. (Tr. 29–30) The ALJ found that Flores met the

insurance status requirements most recently on December 31, 2008. (Tr. 30) The ALJ found that Flores did not engage in substantial gainful activity from his alleged onset day, May 10, 2003, through the date he was last insured. (Tr. 30) At step 3, the ALJ found that Flores had a severe combination of impairments including: diabetes mellitus with neuropathy, headaches, discogenic and degenerative spine disorders, degenerative joint disease in his knees, high blood pressure, obesity, GERD, shingles, and sleep apnea. (Tr. 30)

The ALJ found that the combination of impairments that Flores had did not meet or equal one of the impairments from 20 C.F.R. Part 4, Subpart P, Appendix 1. (Tr. 31) Specifically, the ALJ found that listing 1.02 was not met because Flores did not have a major dysfunction of his joints. (Tr. 31) Flores did not meet Listing 1.04, disorders of the spine, because there was no evidence of compromise in his nerve root or spinal cord. (Tr. 31) The ALJ found that Listing 9.08A was not met for diabetes mellitus because there was no evidence Flores experienced disorganization of the motor functions in two extremities, acidosis once every two months shown by blood tests, or retinitis proliferans. (Tr. 32)

In determining Flores' Residual Functioning Capacity ("RFC"), the ALJ stated that Flores was capable of performing light work with frequent lifting and carrying of ten pounds, occasional lifting and carrying of twenty pounds, standing, walking, sitting, occasional climbing of ramps/stairs/ladders/ropes/scaffolds, balancing, stooping, kneeling, crouching, crawling, and occasional bilateral reaching in all directions. (Tr. 32) Furthermore, the ALJ found that Flores' obesity aggravated his other impairments, which supported her RFC determination. (Tr. 32) The ALJ considered all of Flores' symptoms consistent with the evidence and all opinion evidence in making her decision. (Tr. 32)

In determining Flores' RFC, the ALJ discussed a two-step process in which she first must determine if there was a medically acceptable basis for his complaints, and second decide if his impairments could be expected to produce the pain and symptoms described. (Tr. 32–33) The ALJ found that Flores' medically determinable impairments could be expected to cause the described symptoms but that the intensity, persistence, and limiting effects were inconsistent with the RFC, thus not credible. (Tr. 33)

First, the ALJ noted that Flores' shingles and blood pressure were severe only when in combination with the other impairments, thus they did not affect his ability to engage in substantial gainful activity. (Tr. 33) Flores had no problems after his hemorrhoidectomy and polypectomy, had no restrictions after the procedures, and did not report any pain. (Tr. 34) Flores' gallbladder wall had a normal thickness and had no evidence of ductal dilation. (Tr. 34) The ALJ stressed that Flores had normal glucose readings in 2008, and that he had no evidence of retinal neuropathy at the time. (Tr. 34) Also, nerve conduction studies showed that the criteria for polyneuropathy were not met. (Tr. 34) Flores managed his diabetes well through medication and through weight loss. (Tr. 34) In addition, Flores could control his headaches with the use of medication. (Tr. 34) An MRI on Flores' brain was unremarkable except for a single punctuate focus of increased flair signal in the right frontal white matter, including no evidence of any substantial hearing loss. (Tr. 34–35) With regards to Flores' back, he did therapy, had a brace, and had electric stimulation and heat treatments. (Tr. 35) He had not reported any limitations from his lower back pain in his daily activities. (Tr. 35) Regarding his functional ability, Flores reported an increase and rated his pain as a two out of ten on a ten-point scale in 2007. (Tr. 35) In 2008, he reported that he was functioning at 75%. (Tr. 35) In a

meeting at the Field Office, an interviewer noted that Flores had no difficulties sitting, but he did have difficulties standing, walking, and getting up from his chair. (Tr. 35) Finally, Flores' medical evidence was inconsistent with his complaints. (Tr. 35) In 2007, a CT scan showed bulging annuli, but no disc protrusion, bony spinal stenosis, or nerve root impingement. (Tr. 35)

The ALJ stated that she gave consideration to the state agency medical consultants, treating physicians, and non-examining medical sources. (Tr. 35) Dr. Brill, a state agency medical consultant, completed an RFC for Flores in 2009, which stated that Flores could perform light level work with the same limitations the ALJ adopted. (Tr. 35–36) Dr. Fife, a state agency medical consultant, affirmed Dr. Brill's assessment. (Tr. 36) The ALJ stressed that these doctors' opinions, although they are not afforded the same weight as a treating physician, were still given some weight. (Tr. 36) The reports prepared by Dr. Ivanova, Flores' treating physician, in 2009 and 2010 were given no weight because they were given after Flores' insurance had expired and did not appear to be longitudinal. (Tr. 36) The ALJ noted the inconsistency in that Flores claimed that his back would go out doing minimal jobs around his home but that he continued to work for ten years after being diagnosed with his impairments. (Tr. 36–37)

Ultimately, the ALJ found that although Flores had some limitations, the medical evidence in its entirety demonstrated that he had no greater limitations in his ability to perform work than those reflected in the RFC. (Tr. 37) Flores was capable of performing light work. The evidence showed that he was capable of walking or standing for up to six hours per day and sitting for up to two hours per day. (Tr. 37) The evidence failed to prove that Flores could not lift or carry objects as required by this category. (Tr. 37) Furthermore, Flores' feet, while noted

in 2008 to be a major problem even following surgery, would not limit his ability to work as long as they were cleaned properly by his doctor. (Tr. 37) Finally, Flores did not prove that he had any limitations surrounding his extremities, upper or lower, with exam results revealing no anatomic deformities, swelling, stiffness, skin discoloration, effusion, or increased skin warmth. (Tr. 37, 38)

The ALJ found that Flores was unable to perform any past relevant work since the date he was last insured but that there were jobs available in significant numbers that Flores could have performed through the date he was last insured. (Tr. 38) The VE testified that Flores still could work as a host, an information clerk, or an usher. (Tr. 39) The ALJ stated in her decision that this testimony was consistent with the DOT. (Tr. 39) Thus, based on the testimony of the VE, through the date Flores was last insured, and with consideration being given for his education, age, work experience, and RFC, the ALJ found that Flores was not disabled as defined in the Social Security Act. (Tr. 39)

Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as, "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28

L. Ed.2d 852, (1972)(*quoting* **Consolidated Edison Company v. NRLB**, 305 U.S. 197, 229, 59 S.

Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *see also* **Shideler v. Astrue,** 688 F.3d 306, 310 (7th Cir.

2012*)*; *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir.2003); *Sims v. Barnhart*, 309 F.3d 424, 428

(7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial

evidence and if there have been no errors of law. *Rice v. Barnhart*, 384 F.3d 363, 368–369 (7th

Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot

stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at

539.

Disability insurance benefits are available only to those individuals who can establish

"disability" under the terms of the Social Security Act. The claimant must show that he is

unable

> to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months.

**42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential

evaluation to be followed when determining whether a claimant has met the burden of

establishing disability. **20 C.F.R. § 404.1520.** The ALJ first considers whether the claimant is

presently employed or, "engaged in substantial gainful activity." **20 C.F.R. § 404.1520(b).** If he

is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next

addresses whether the claimant has a severe impairment or combination of impairments which,

"significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §**

**404.1520(c).** Third, the ALJ determines whether that severe impairment meets any of the

impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1** If it does, then

the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's RFC and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e).** However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).**

Flores raises three challenges to the ALJ's denial of Disability Insurance Benefits. First, Flores claims that the ALJ failed to incorporate all of his impairments into her RFC evaluation, rendering the hypotheticals she gave to the VE inaccurate. Second, Flores complains that the ALJ did not accurately assess his credibility because she failed to consider properly his subjective complaints of pain. Third, Flores claims that the ALJ failed to find that his obesity was a severe limitation under Step 2 and did not properly assess his other physical impairments as they were affected by his obesity.

Regarding the first challenge, Flores argues that all relevant evidence must be taken into consideration in evaluating his RFC, which would include evidence of his ongoing mental and physical impairments. Specifically, Flores asserts that although the ALJ did state that his obesity would have an aggravating effect on his other impairments, the ALJ did not take into account any additional limitations Flores might have due to his obesity. Flores also had pain in his feet, spine, and back that prevented him from standing and walking, and he experienced headaches

two to three days a week that caused him to have to lie down.  Flores argues that the inability to

do these tasks and the need to lie down contradict the ALJ's finding that he could perform light

work.  Finally, Flores contends that the ALJ did not consider any of his non-exertional

limitations that he suffered from as a result of his pain.  Because the ALJ did not incorporate all

of Flores' impairments in the questioning, Flores argues that the ALJ did not present an accurate

hypothetical to the VE.

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of

the sequential evaluation.  In a section entitled, "Narrative Discussion Requirements," SSR 96-

8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling

provides:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations). In assessing
> RFC, the adjudicator must discuss the individual's ability to perform sustained work
> activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours
> a day, for 5 days a week, or an equivalent work schedule), and describe the
> maximum
> amount of each work-related activity the individual can perform based on the
> evidence available in the case record. The adjudicator must also explain how any
> material inconsistencies or ambiguities in the evidence in the case record were
> considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a

difference between what the ALJ must contemplate and what she must articulate in her written

decision.  *See **Morphew v. Apfel***, 2000 WL 682661 at *3 ("There is a distinction here [in SSR

96-8p] between what the ALJ must consider and what the ALJ must articulate in the written

opinion."); ***Lawson v. Apfel***, 2000 WL 683256, *2-4 (S.D.Ind. May 25, 2000) (ALJ who

restricted the claimant to medium work satisfied the requirements of SSR 96-8p)("[SSR 96-8p]

does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis. Rather, an ALJ must explain how the evidence supports his or her conclusions about the claimant's limitations and must discuss the claimant's ability to perform sustained work activities."). "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)(quoting *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000))

If a claimant is obese, the ALJ must specifically address the "incremental effect" of obesity on the claimant's limitations. *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). Even if a claimant does not contend that obesity is one of his impairments, SSR 02-1p requires an ALJ to consider the effects of obesity on the claimant's other conditions. However, the failure to explicitly consider these effects can be "harmless error." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). Since the ALJ in *Prochaska* "sufficiently analyzed" the claimant's obesity by implicitly considering the issue, in part by relying on medical documents that noted the claimant's height and weight, and because the claimant did not specify how obesity specifically impaired her work ability, the Seventh Circuit found that any error on the ALJ's part in explicitly considering the claimant's obesity was harmless. *Prochaska v. Barnhart*, 454 F.3d at 737. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)(ALJ's adoption of limitations suggested by doctors who were aware of claimant's obesity, plus claimant's failure in specifying how weight impaired the ability to work, was harmless error).

The record shows that the ALJ took Flores' obesity into account. The ALJ acknowledged that Flores' obesity was a severe impairment and explained that it affected his

other medical conditions because it caused fatigue, joint pain, back pain, shortness of breath, and decreased mobility.  In *Prochaska,* the ALJ met his duty by implicitly considering obesity through consideration of medical notes that accounted for the effects of obesity.  Here, the ALJ went beyond consideration of the medical evidence and explicitly explained how Flores' obesity might affect his other ailments.  Moreover, the ALJ implicitly considered the effects of obesity by going on to state that the objective medical notes, which also accounted for Flores' weight, were overwhelmingly normal and did not establish that Flores suffered from a disability that impaired his ability to work.  Flores, who carries the burden to show that he is disabled, has not pointed to any additional limiting effects that his obesity imposed. *See* 20 C.F.R. § 404.1512 (explaining that claimant carries the burden of proof to show that he is disabled).  Because Flores did not point to any additional limitations, and the ALJ exceeded the expectations set forth in *Prochaska* by explicitly commenting on the effects of obesity, the ALJ satisfied her duty.

Flores next complains that he had problems with his feet, spine, and back that prevented him from standing and walking, and thus made him unable to meet the demands of light work.  The ALJ acknowledged that Flores had a continuing need to have his feet treated.  However, the ALJ explained that with proper cleaning of his feet, Flores found relief.  He also had two successful surgeries, and although Dr. Meade stated that Flores' symptoms may reoccur, Flores never reported any reoccurrences.  The ALJ engaged in a thorough explanation for why she did not believe that Flores' foot problems would inhibit his ability to perform light work, finding that his past treatment had been effective and with treatment, Flores' foot problems were not disabling.

Flores next complains that the ALJ failed to account for his ongoing lumbar pain.  Flores

points to his May 15, 2007 emergency room visit for uncontrolled back pain and subsequent

MRI that revealed L5-S1 disc herniations with pressure against both S1 nerve roots, left-sided

neural foramen stenosis, mild L4-L5 stenosis, and L2-3 and L4-5 disc degeneration. In her

opinion, the ALJ acknowledged that Flores suffered from back pain and recapped his past

treatment history. The ALJ went on to explain that Flores' back treatment was infrequent and

conservative. After his emergency room visit, Flores did not complaint of back pain for over a

year and a half. Physical therapy was recommended, and after his first set of therapy, he

reported a 75% functional status and pain at a 5 out of 10. In January 2009, Flores stated that he

experienced only intermittent pain at a level of 3 out of 10 and that his lumbar range of motion

had improved. The ALJ also referred to Dr. Emereuwaonu's normal clinical findings, which

included full range of motion and normal strength in Flores' upper extremities. Although Flores

is able to point to past doctor's notes that revealed problems with his back to support his

allegations of pain, the ALJ relied on more recent medical evidence to show that his back pain

was not as debilitating as Flores argues. His pain decreased, his range of motion improved, and

he had full strength. Flores has not demonstrated that the ALJ erred in relying on the more

recent medical evidence, and the ALJ's reliance on such provides substantial support for her

conclusion.

Flores also challenges whether the ALJ's RFC determination accounted for his

headaches. Flores complained of headaches to his treating physician. In September 2006, an

MRI of his brain was conducted, which revealed a single punctuate focus of increased flair

signal in the right front white matter. It was determined that the white matter was related to

Small Vessel Ischemic Disease. Flores testified that he suffered four or five headaches a week

and for at least two or three days a week his activities were limited to laying down or sitting with his feet up.  Again, the ALJ acknowledged that Flores experienced headaches, but she explained that the medical evidence did not corroborate his complaints of the magnitude and frequency of the headaches.  The ALJ explained that Flores testified that his headaches responded to medication.  No treatment recommendations were made from the MRI, and no additional complaints of headaches were made to any medical source after the MRI was conducted.  Although the ALJ disregarded Flores' explanation of the frequency and magnitude of his headaches, she did so by relying on Flores' own testimony that medication treated the symptoms and the lack of additional corroborating medical evidence. Therefore, the ALJ provided sufficient support for her conclusion.

Finally, Flores complains that the ALJ did not consider his non-exertional limitations, but he does not identify what those non-exertional limitations are.  Flores cites to several cases where the ALJ failed to consider the limitations imposed by the claimant's mental conditions.  However, Flores has no reported mental conditions and testified that he did not experience difficulty interacting with others.  Flores abandons this argument in his reply brief, and without greater explanation, the court cannot be sure precisely what shortcoming Flores is alleging.  Moreover, the ALJ did limit Flores' non-exertional limitations when she said that Flores was capable of light work with occasional climbing of ramps/stairs/ladders/ropes/scaffolds, balancing, stooping, kneeling, crouching, crawling, and occasional bilateral reaching in all directions.  (Tr. 32) It is not clear what additional limitations Flores' believes the ALJ should have addressed.

Overall, the ALJ provided a sufficient explanation for his RFC determination.  The ALJ

explained her reasons for accepting and rejecting the relevant evidence, pointing to both the limited and conservative treatment. Because the ALJ's RFC determination was well supported, the ALJ was not required to include additional limitations in the hypothetical questions he posed to the VE.

Flores next complains that the ALJ erred in her credibility determination because she failed to consider his subjective complaints of pain and did not explain how his intermittent ability to perform chores translates into the ability to perform full-time work. The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "history, the signs and laboratory findings, and statements from [the claimant], [the claimant's] treating or nontreating source, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F .R. §404.1529(c);** *Schmidt*, 395 F.3d at 746–47 ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96–7p at *1. *See also* **Indoranto v. Barnhart,** 374 F.3d 470, 474 (7th Cir. 2004); **Carradine v. Barnhart**, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

**Luna v. Shalala**, 22 F.3d 687, 691 (7th Cir. 1994)

*See also* **Zurawski v. Halter**, 245 F.3d 881, 887–88 (7th Cir. 2001).

In addition, when the ALJ has discounted the claimant's description of pain because it was inconsistent with the objective medical evidence, she must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p at *2. *See* **Zurawski,** 245 F.3d at 887; **Diaz v. Chater**, 55 F.3d 300, 307–08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). He must

"build an accurate and logical bridge from the evidence to [his] conclusion." ***Zurawski***, 245 F.3d

at 887

(quoting ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts

regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's

statement that a claimant may return to work without examining the evidence the ALJ rejected.

*See **Zurawski**,* 245 F.3d at 888 (quoting *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986))

("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection

must be examined, since review of the substantiality of evidence takes into account whatever in

the record fairly detracts from its weight.") (emphasis in original).

Flores first complains that the ALJ disregarded his complaints of pain and numbness in

his extremities.  Flores had neuropathy in his feet that caused a decrease in sensation and has led

to fissuring, thick calluses, tyolmas, and pain.  Flores pointed to the results of an EMG

performed in April 2007 to support his complaints of pain.  The EMG revealed left median

neuropathy at the wrist, right median neuropathy at the wrist, problems with the upper extremity

sensory and motor findings, left L5 and S1 radiculopathy, and chronic right L5 radiculopathy.

The Commissioner argues that the EMG revealed only mild neuropathy of his wrist and that his

pain was resolved with physical therapy and criticizes Flores for failing to point to medical

evidence in the record to support his complaints of pain arising from neuropathy.

In the opinion, the ALJ acknowledged Flores' complaints of neuropathy and explained

that Flores reported that he managed his diabetes well and took Amitriptylin to control his

neuropathy.  The ALJ referred to the Diabetes Neuropathy Questionnaire prepared by Dr.

Ivanova, which concluded that Flores could not perform substantial gainful activity due to the

inability to sit, stand, or walk for an 8 hour period, but she disregarded it because it was prepared after the date last insured. The ALJ went on to explain Flores' daily activities, stating that they were not as limited as one would expect in light of Flores' complaints of pain. The ALJ also noted that Flores complained of decreased sensation to Dr. Meade but that Flores' foot problems were relieved by proper cleaning of his feet by Dr. Meade. A 2009 examination revealed full strength and motion in all major muscle groups and normal pulses and sensation.

The only evidence Flores cited to in support of his complaints of pain and numbness in his extremities was the results of an EMG which revealed only mild neuropathy of his left wrist and did not show that he experienced the same in his feet. Flores was not prescribed any treatment for neuropathy upon review of the results, which suggests that his neuropathy was not severe. Flores has not cited any evidence that the ALJ ignored which would substantiate his complaints of pain, specifically that of neuropathy in his feet. The ALJ explained her reasons for disregarding the corroborating evidence, specifically the report prepared by Dr. Ivanova, relied on the claimant's daily activities, which contradicted his complaints of pain, and found that with treatment the effects of neuropathy were not consistent with Flores' complaints. She further found that Flores reported his treatment was effective. For these reasons, the ALJ satisfied her burden, and the court cannot find that her credibility determination was patently wrong.

Flores also argues that the ALJ failed to consider his complaints of pain arising from his back and knee problems and increased by his obesity. However, the ALJ provided a detailed explanation of her reasons for rejecting Flores' complaints of pain arising from these impairments. The ALJ explained that Flores did not report any limitations in his daily activities as a result of back pain. He rated his pain on a scale of 2 on a 10 point scale. On December 31,

2008, Flores reported his functional status was 75%. During his interview at the field office, the interviewer reported that Flores did not have any observable difficulties sitting but that he was slow to rise from his chair and walked with a slow gait. The ALJ also explained the results of Flores' CT and MRI scan to substantiate her conclusion that Flores' back problems were not debilitating. The ALJ also found Flores' obesity to be a severe impairment and explained how it impacted his condition, but she noted that Flores' apneas and hypoapneas, which were caused by his obesity, were relieved with the use of a CPAC machine. Flores underwent an emergent hemmorhoidectomy in 2006, and on the follow up examination there were no problems noted concerning his ability to perform activities and he was not placed on restrictions.

The ALJ provided sufficient detail for rejecting Flores' complaints of pain arising from these impairments. Although Flores can point to some medical evidence corroborating his complaints of pain, the ALJ satisfied her duty by pointing to the lack of evidence corroborating Flores' complaints of pain and pointing to medical evidence more recent than that on which Flores relies to show that his complaints of pain were not disabling. For these reasons, the ALJ satisfied her duty with respect to considering Flores' complaints of pain arising from his back and knee problems and obesity.

Flores also complains that the ALJ relied too heavily on his ability to do intermittent chores. The notes to SSR 96-8P explain that the "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." When making this determination, the ALJ may consider the claimant's daily activities. If the ALJ had placed significant weight on a claimant's daily activities to support a finding that

the claimant can sustain employment, the activities must reflect that the person was capable of engaging in work eight hours a day for five consecutive days a week.  *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004).  *See also Hughes v. Astrue*, 705 F.3d 276, 278-279 (7th Cir. 2013); *Roddy v. Astrue*, No. 12-1682 (7th Cir. Jan. 18, 2013).  To show this, the record should reflect that the claimant engaged in such activities for a substantial part of the day.  *Carradine*, 360 F.3d at 756.  Evidence of sporadic physical activity is not sufficient because a claimant may engage in sporadic activities despite pain, but may not be able to engage in continuous activity for an 8-hour workday.  *Carradine*, 360 F.3d at 756.  Moreover, the activities must be translatable to a work setting.  *Carradine,* 360 F.3d at 756.  "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons..., and is not held to a minimum standard of performance, as she would be by an employer."  *Hughes*, No. 12-1873.  The ALJ must make a clear record that the claimant's activities are such that the claimant could perform duties common to the work place on a sustained basis.  *Carradine,* 360 F.3d at 756.

In *Carradine*, the claimant testified that she could drive, shop, and do housework.  *Carradine,* 360 F.3d at 756.  The ALJ relied on this when determining that the claimant was capable of working.  *Carradine,* 360 F.3d at 756.  On appeal, the Seventh Circuit explained that although the claimant could perform these activities, the claimant performed the reported activities on a sporadic basis, and the record was not clear whether these skills were capable of translation to a work setting or whether the claimant could sustain activity on a continuous basis during an 8-hour work day.  *Carradine,* 360 F.3d at 756.  The Seventh Circuit remanded for further explanation of how the claimant's reported daily activities were consistent with a finding

that she could engage in work eight hours a day, five days a week.  *Carradine*, 360 F.3d at 756.

The ALJ stated that Flores' daily activities were not as limiting as one would expect given his complaints of disabling limitations.  Flores mowed his lawn, raked leaves, did snow blowing, and drove.  He lived alone and did all of the chores.  He also worked full-time for ten years after he was diagnosed with his impairments.  It appears that the ALJ pointed to the specific tasks not to show that Flores could maintain sustained employment, but to show that he was capable of activity that required substantial exertion.  Flores' ability to maintain full-time employment for ten years following his diagnoses, on the other hand, demonstrated that he was capable of performing such physical work on a sustained basis.

As his final argument, Flores again challenges the ALJ's assessment of his obesity.  Flores argues that the ALJ erred by not finding his obesity to be a severe impairment.  However, the ALJ stated that obesity was one of Flores' severe impairments.  (Tr. 30) The ALJ also stated, "[i]t is reasonable to conclude that the claimant's obesity has the effect of aggravating his other medical conditions due to fatigue, joint pain, back pain and shortness of breath, and decrease[d] . . . mobility.  Thus, the effects of the claimant's obesity further support the residual functional capacity reached in this decision."  (Tr. 32)  The record clearly reflects that the ALJ considered Flores' obesity and how it would affect his other impairments.  The court already has addressed the ALJ's RFC finding, including his explanation of the effects of Flores' obesity.  The ALJ acknowledged additional limitations imposed by Flores' condition and satisfied her obligation to consider the effects of obesity.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 19th day of April, 2013

/s/ Andrew P. Rodovich

United States Magistrate Judge